IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| ZOE SPENCER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:16-cv-989–HEH |
| | ) |
| VIRGINIA STATE UNIVERSITY | ) |
| and DR. KEITH T. MILLER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
### (Denying Defendants' Motion to Dismiss)

Plaintiff Zoe Spencer ("Plaintiff") brings suit against her employer, Virginia State University ("VSU" or "the University"), and Dr. Keith T. Miller, VSU's former President (collectively "Defendants"), alleging willful wage discrimination and retaliation under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), *et seq.*

This matter comes before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 24.)  Defendants seek dismissal of Plaintiff's entire Complaint, arguing that she has failed to plead a plausible claim under the EPA.

Each side has filed memoranda supporting their respective positions.  The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).

For the reasons set forth below, the Court will deny Defendants' Motion.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's First Amended Complaint ("F.A.C.").[1] Viewed through this lens, the facts are as follows.

Plaintiff earned her Master's degree in Social Work in 1992 and received her Ph.D. in Sociology in 2005, both from Howard University. (F.A.C. ¶ 36, ECF No. 19-1.) Since August 2008, Plaintiff has been employed at VSU. (*Id.* ¶ 37.) VSU initially hired her as an Assistant Professor in the Department of Sociology, Social Work, and Criminal Justice, and promoted her in 2010 to the rank of Associate Professor, a position she currently holds. (*Id.*) Plaintiff is presently a member of both the Undergraduate and Graduate faculty and is qualified to teach at the graduate level, mentor, and sit on and advise thesis and dissertation committees both within the University and as an external reviewer/advisor for other institutions. (*Id.* ¶ 39.)

---

[1] Plaintiff filed her initial Complaint on May 22, 2015, in the Circuit Court of the City of Richmond. While in state court, she amended her Complaint on April 7, 2016. Soon after receiving service, Defendants removed the case to this Court on June 2, 2016. *See Spencer v. Virginia State University, et al.*, Civil No. 3:16-cv-331 (ECF No. 1). After being served with a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff sought leave to file a Second Amended Complaint, which the Court granted. *Id.* (ECF No. 18). The Second Amended Complaint was filed on July 7, 2016. *Id.* (ECF No. 19). The Court eventually granted a subsequent Motion to Dismiss, and dismissed the case without prejudice. *See id.* (ECF No. 46). Plaintiff then filed a new Complaint on December 19, 2016. *Spencer v. Virginia State University, et al.*, Civil No. 3:16-cv-989 (ECF No. 1). Nearly two months later, after being served with another Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court granted Plaintiff leave to file her First Amended Complaint in this case. *Id.* (ECF No 26).

VSU utilizes a standard Employee Work Profile ("EWP"), which establishes a common core of responsibilities for all faculty members. (*Id.* ¶ 14.) As part of this common core of tasks, faculty members must: "prepare syllabi which reflect course objectives; prepare lessons, activities, and lectures that serve to impart knowledge to students; instruct their students through the use of varying pedagogical methods, such as lectures, technology, practical classroom experiences, group discussion, and media; keep track of whether students are retaining knowledge and meeting the objectives and outcomes of the course through exams, projects, presentations, practical experiences, writing assignments, group work, service, and other activities; manage classroom dynamics; assist students with course material; advise majors; maintain office hours; provide feedback on assignments; input . . . midterm and final grades; and attend contractually-mandated functions." (*Id.* ¶ 26.)

In order to fulfill their teaching responsibilities, faculty members are required to: "study and prepare for class presentations and lectures; present their subject in an interesting and challenging manner; engage in class discussions; prepare tests and exams that fairly cover the subject taught; promptly grade tests and exams; and maintain regular office hours for student consultation and assistance." (*Id.* ¶ 28.) Plaintiff contends that these skills are required of *all* faculty members, regardless of academic department, discipline, or sex. (*Id.* ¶¶ 31–32.)

Within this context, it appears that Plaintiff has had a noteworthy career while at VSU. She "has consistently achieved ranks of 'outstanding' in the areas of teaching and service, and ranks of 'outstanding' and 'noteworthy' in scholarship." (*Id.* ¶ 37; *see also*

3

*id.* ¶ 47 (outlining Plaintiff's research, scholarship, and service efforts); F.A.C. Ex. C, ECF No. 19-4 (Plaintiff's CV).) Plaintiff "has also received [ranks of] 'outstanding' in all categories in Faculty evaluations." (F.A.C. ¶ 37.) Moreover, she has earned this reputation all while teaching a full course load of at least five classes each semester, with each consistently filled close to or at capacity. (*See id.* ¶¶ 40–44.)

Having this reputation amongst her colleagues and within the scope of serving as the Faculty Senate Chair, Plaintiff approached then-VSU President Dr. Keith T. Miller in early 2012 to discuss gender equity at the University. (*Id.* ¶ 83.) Dr. Miller gave Plaintiff permission to research the issue. (*Id.*) As a result, Plaintiff chaired a six-member organization called "The Gender Equity Task Force" (the "Task Force") and presented its findings to the full Administrative Cabinet in the Spring 2012 semester. (*Id.*) At the presentation, Plaintiff warned the VSU Administration about the University's potential liability under the EPA, suggested hiring a Vice President or Ombudsman for Equity, and made further recommendations for addressing disparate pay. (*Id.*) Later, in September 2012, Plaintiff spoke with Board of Visitors member Terone Green about the Task Force's findings. (*Id.* ¶ 90.) The VSU Administration ultimately declined to follow the Task Force's recommendations. (*Id.* ¶ 85.)

After attending Plaintiff's Task Force presentation, Provost Weldon Hill referred to her as a "trouble maker" to other colleagues. (*Id.* ¶ 89.) And soon after making these comments, in May 2012, Provost Hill intentionally delayed signing Plaintiff's paperwork for her Summer School pay, which resulted in a delay of receiving payment and caused Plaintiff significant financial hardship. (*Id.* ¶ 91.) Later that year, in December 2012—

after Plaintiff spoke with Green—Provost Hill again "refused to sign [Plaintiff's timesheet] and instead lied to [her] about having already signed it in order for her to get paid." (*Id.* ¶ 92.) Plaintiff eventually received her paycheck three pay periods later, on January 15, 2013. (*Id.*) "This delay caused financial hardship and a 30-day credit delinquency." (*Id.*) Plaintiff asserts that both payment delays were the result of Provost Hill's retaliatory animus against her for making the Task Force presentation. (*Id.*)

In May 2013, Plaintiff gave one of her students a failing grade in her Sociological Theory class. (*Id.* ¶ 97.) After the student complained about Plaintiff's failure to give an "incomplete" or a passing grade that was undeserved, the Provost's Office encouraged her to file a formal discrimination complaint with the Office for Civil Rights.[2] (*Id.*) The University's EEOC Director and University Counsel refused to represent Plaintiff in the matter. (*Id.* ¶ 98.) This forced Plaintiff to go through a lengthy and intense investigatory process, which required her to negotiate directly with the Office for Civil Rights without any support from VSU. (*Id.*) Plaintiff contends that VSU's actions "served to undermine her reputation and character and caused [her] a great deal of stress and duress" throughout the two-month investigation. (*Id.*) Plaintiff concludes that this "targeting . . . was motivated by retaliatory animus against [her] for having" made the Task Force presentation. (*Id.*)

---

[2] Plaintiff asserts that "[n]either Provost Hill nor the Associate Provost in his office informed [her] of the student's complaint, or advised the student to follow the chain of command for student complaints and/or grade appeals, as is customary. They further did not advise the student or her mother that the student had failed to file the appropriate notification and accommodation paperwork with the Students with Disabilities Office, and thus did not follow VSU guidelines required for seeking an accommodation request. Thus, the Administration *knew* that [Plaintiff] had no knowledge of the student's disabilities, or any requested accommodations." (*Id.* ¶ 98.)

Roughly two months later, on July 30, 2013, Plaintiff sent a lengthy message to Provost Hill and several other members of the Administration complaining about the lack of security of faculty members' tenure and promotion dossiers. (*Id.* ¶ 93.) After a heated exchange between Plaintiff and Provost Hill, Provost Hill said, "[B]ecause of the stage that's been set over the last two years. . . . [i]n this environment of heightened tension and with your own background . . . you're as sensitive to the human condition as anyone. . . . A wise person taught me a long, long time ago, that, 'If you get dragged into a game you do not wish to play, then play the end-game.'" (*Id.* ¶ 96; *id.* Ex. A, at 22, ECF No. 19-2.) Plaintiff took this statement to be a veiled threat that if she continued to voice concerns about Provost Hill and the Administration, she could expect further reprisal. (F.A.C. ¶ 96.) In response to the "escalating patterns of retaliation," Plaintiff applied to teach abroad in China for the Fall 2013 semester. (*Id.* ¶ 99.)

In November 2013, while teaching in China, Plaintiff discovered that Provost Hill had denied her request to teach an overload course at Fort Lee, for which she received additional compensation. (*Id.* ¶ 100.) After contesting the denial and confronting Provost Hill, the course was eventually reinstated. (*Id.*) Several months later Provost Hill told Plaintiff in a February 2014 email that "[i]t is nearly impossible to get people to improve upon what we have by simply looking in the mirror . . . Instead we have to be consumed with protecting ourselves or competing for different jobs because of the pervasive personal attacks, animus, disdain, and hatred amongst us all . . . ." (*Id.* ¶ 101 (emphasis removed, ellipses in original).) Plaintiff claims that this is a clear reference to her complaints about gender-based pay inequities at VSU and an admission that Provost

6

Hill harbored retaliatory animus against her. (*Id.*)

In April 2014, VSU created two new Associate Professor positions in the Departments of Doctoral Studies and Mass Communication. (*Id.* ¶¶ 102, 103.) The VSU Administration unilaterally filled these newly created vacancies with two former Administration members, Michael Shackleford and Cortez Dial. (*Id.*) Shackleford and Dial received these appointments despite the fact that neither had a terminal degree in their respective fields of instruction, neither had four years teaching experience at the University level at the rank of Assistant Professor or higher, and neither had other experience that would qualify them to perform at the Associate Professor level.[3] (*Id.*; *see also id.* ¶¶ 52–57, 63, 67–74, 76 (describing Shackleford and Dial's qualifications and experience).)

At the time of these new hires, Plaintiff was earning a salary of $70,400 per academic year.[4] (*Id.* ¶ 49.) Despite Shackleford and Dial's apparent lack of requisite experience and qualifications to be Associate Professors, they received starting salaries of $119,734 and $105,446 per academic year, respectively—more than any other female faculty member at VSU with the same or higher rank.[5] (*Id.* ¶¶ 102, 103.)

And so, on July 25, 2014, Plaintiff sent an email to Dr. Miller and Provost Hill

---

[3] "Appointment as Associate Professor at VSU requires: a terminal degree (e.g., Doctorate, M.F.A., etc.) in the area of teaching specialty, or its recognized equivalent; four years of full-time college/University teaching experience at the Assistant Professor rank or above, or its equivalent; . . . evidence of an established high quality of performance in teaching, research/creative activities, and service; and a record should clearly indicate that he/she will be able to meet the University's standards for the award of tenure within the allowed time period." (*Id.* ¶ 20.)

[4] This was Plaintiff's salary from 2013–2016. (*Id.*) From 2011–2013, Plaintiff earned $68,500 per academic year. (*Id.*)

[5] While Shackleford is no longer teaching at VSU (F.A.C. Ex. B, at 14, ECF No. 19-3), Dial currently earns $107,556 per academic year. (F.A.C. ¶ 66.) In contrast, Plaintiff now receives an annual salary of $71,441. (*Id.* ¶ 49.)

requesting an increase in her salary "in order to equalize her pay to that of male professors performing substantially equal work as her." (*Id.* ¶ 104.) While arguing that her request was made based on her own qualifications, she reiterated the Task Force's findings and recommendations by noting that her "male counterparts who have joined the ranks of faculty with less experience in teaching and research in the disciplines to which they have been assigned," which she contends constitutes further evidence of salary disparities between male and female faculty members at VSU. (*Id.*) She sent a number of follow-up emails to various members of the VSU Administration restating her interest in a pay raise and asserting that denying her request would be a violation of the EPA when viewed within the context of the Shackleford and Dial hires. (*Id.* ¶¶ 105–108.) On September 12, 2014, Provost Hill denied Plaintiff's request for a salary adjustment, despite the fact that her request was supported by her Department Chair, Dr. Joyce Edwards. (*Id.* ¶ 109.)

Undeterred, Plaintiff notified the VSU Board of Visitors of her request for a salary adjustment on September 13, 2014, and again included information regarding her belief that Shackleford and Dial's pay rate reflected gender discrimination in violation of the EPA. (*Id.* ¶ 110.) Ultimately, the VSU Board of Visitors approves faculty[6] salaries after reviewing the President's recommendation. (*Id.* ¶ 8.) This determination is based upon rank and experience, not departmental affiliation or subject matter taught.[7] (*Id.* ¶ 10.)

---

[6] Any faculty member (Assistant Professor, Associate Professor, or Professor) is considered to be part of the "General Faculty," a designation that is then subdivided into five categories: "restricted, probationary, term, continuing, or tenure contracts." (*Id.* ¶ 11.)
[7] When conducting an overall assessment of faculty performance in the scope of reaching a decision, the Board of Visitors assigns the following weights to three criteria: (1) Teaching: 40–55%; (2) Research/

After review, the Board of Visitors also declined to approve Plaintiff's request. (*Id.* ¶ 110.)

In response, Spencer filed a formal charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on April 13, 2015. (*Id.* ¶ 111.) And on May 22, 2015, Plaintiff filed her initial EPA Complaint against VSU, the current iteration of which names Shackleford and Dial as comparators under the Act for discrimination purposes. (*Id.* ¶ 112; *see also supra* note 1 (tracing the history of this litigation).)

As a point of comparison between Plaintiff, Shackleford, and Dial, Plaintiff points to the number of classes each has taught since 2014 as well as the total enrollment in those courses. From Fall 2014 through Fall 2016,[8] Plaintiff taught twenty-six courses— one at the graduate level and the remaining twenty-five at the undergraduate level—with a total enrollment of 984 students. (*Id.* ¶¶ 40–44.) In contrast, during the same period,[9] Dial taught fourteen courses—eleven at the graduate level and the remaining three at the undergraduate level—with a total enrollment of eighty-seven students. (*Id.* ¶¶ 59–62.) And though Plaintiff only provides one semester of data for Shackleford, she asserts that he taught two doctorate-level, dissertation courses during the Spring 2015 semester, with a total enrollment of seven students. (*Id.* ¶ 74–75.)

Soon after filing her EEOC charge and her initial EPA Complaint, Plaintiff requested information from VSU's EEO/Compliance Manager, Julia Walker, on May 27,

---

Scholarship: 25–40%; and (3) Service: 15–20%. (*Id.* ¶ 16.)
[8] Plaintiff taught courses every semester during this time period.
[9] Dial taught courses every semester during this time period, with the exception of Spring 2016.

2015, regarding an unrelated action. (*Id.* ¶ 113.) Walker informed her that "she would need to make all requests through her attorney, even though it was a matter unrelated to her EPA lawsuit and EEOC charge." (*Id.*)

Over the course of the following months, Provost Hill informed new Presidents and Administrators about her pending lawsuit, again referring to her as a "trouble maker." (*Id.* ¶ 114.) In August 2015, Plaintiff submitted a threat assessment to University Counsel, Ramona Taylor, regarding a troubled student who was stalking her. (*Id.* ¶ 116.) The VSU Administration did not respond to Plaintiff's concerns, forcing Plaintiff's Department Chair to teach the course in which the student was enrolled. (*Id.*) And finally, in January 2016, the VSU Administration removed Plaintiff without explanation from her role of giving a speech during Freshman Orientation which she had given for the preceding three years. (*Id.*)

Plaintiff avers that these actions constitute further evidence that the VSU Administration holds a retaliatory animus against her. (*Id.* ¶ 118.)

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's wage discrimination claims under the EPA (Count I), asserting that Plaintiff has not identified proper comparators as required by the statute. Furthermore, Defendants move to dismiss Plaintiff's retaliation claims under the EPA (Count II), alleging that Plaintiff suffered no materially adverse employment action as a result of retaliatory animus.[10] The Court will address each argument in turn.

### i. Wage Discrimination under the EPA

In Count I of her F.A.C., Plaintiff alleges that Defendants unlawfully and willfully

---

[10] The Court observes that Defendants do not explicitly challenge Plaintiff's claim that Defendants' violations were knowing and willful (Count III). The statute of limitations for a claim alleging a violation of the EPA is two years. 29 U.S.C. § 255(a). However, when an employee brings a cause of action arising from an employer's "willful violation" of the EPA—which Plaintiff has done in Count III—the statute of limitations period is three years. *Id.* Plaintiff claims that this enlarged statute of limitations is applicable and further asserts that the "EPA provides increased civil penalties for incidents of 'willful' or 'repeated' violations," citing "29 U.S.C. § 216(B)(2)." (F.A.C. ¶ 131.) The Court notes that it made a statement to this effect in its previous Memorandum Opinion dismissing Plaintiff's initial case. *See Spencer v. Va. St. Univ.*, Civil Action No. 3:16cv331, 2016 WL 7026442, at *4 (E.D. Va. Nov. 30, 2016). However, this appears to have been an inadvertent error as the Court has been unable to locate this statutory provision or any other similar to it.

discriminated against her on the basis of her sex, in violation of the EPA.

The EPA prohibits employers from discriminating on the basis of sex "by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

To establish a plausible claim of wage discrimination under the EPA, a plaintiff bears the burden of showing: "(1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 613 (4th Cir. 1999) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)), *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003). This disparity is typically shown by a "factor-by-factor" comparison to a specific male comparator. *Houck v. Va. Polytechnic Inst. and State Univ.*, 10 F.3d 204, 206 (4th Cir. 1993).

A proper comparator for EPA purposes performs work "substantially equal" to that of the plaintiff. *Wheatley v. Wicomoco Cty.*, 390 F.3d 328, 332 (4th Cir. 2004) (citations and internal quotation marks omitted). Though "application of the [EPA] is not restricted to identical work," *Brennan v. Prince William Hosp. corp.*, 503 F.2d 282, 291 (4th Cir. 1974), "the jobs involved should be *virtually* identical, that is . . . very much alike or closely related to each other." *Wheatley*, 390 F.3d at 333 (quoting *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973) (emphasis added and internal

quotation marks omitted)). This requires more than a mere showing that the plaintiff and the putative comparator share the same job title. *Wheatley*, 390 F.3d at 332. The analysis turns on whether the jobs to be compared share a "common core" of tasks. *Hassman v. Valley Motors, Inc.*, 790 F. Supp. 564, 567 (D. Md. 1992) (cited for this proposition with approval in *Dibble v. Regents of Univ. of Md. Sys.*, 1996 WL 350019, at *3 (4th Cir. 1996) (unpublished opinion)).

However, "jobs do not automatically involve equal effort or responsibility even if they 'entail most of the same routine duties.'" *Wheatley*, 390 F.3d at 333 (quoting *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972)). The Fourth Circuit has expressly "decline[d] to hold that having a *similar* title plus *similar* generalized responsibilities is equivalent to having *equal* skills and *equal* responsibilities." *Id.* at 334. Jobs with a shared common core of tasks may be considered unequal if the more highly paid job involves additional tasks requiring extra effort or time or contributes economic value "commensurate with the pay differential." *Hodgson,* 454 F.2d at 493 (quoting *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 725 (5th Cir. 1970)).

At the outset, the Court finds that Plaintiff has pleaded facts sufficient to satisfy the first and third factors required to plead a plausible claim for wage discrimination under the EPA. For the first factor, Plaintiff has pleaded that at the time of their hiring, Shackleford and Dial received starting salaries of $119,734 and $105,446, respectively, in comparison to her own annual salary of $70,400. (F.A.C. ¶¶ 49, 102, 103; *see also supra* note 5 (detailing the current pay discrepancies between Plaintiff and Dial).) Moreover, Plaintiff has pleaded that she, Shackleford, and Dial are professors at VSU and

teach in a classroom or lecture hall setting in an academic building, which the Court deems sufficient under the third factor.  (F.A.C. ¶¶ 26, 102, 103.)

Defendants, however, contend that Plaintiff has failed to plead facts sufficient to satisfy the second factor.  Defendants argue that neither Shackleford nor Dial are proper comparators for EPA purposes because they teach different courses to different levels of students in different departments than Plaintiff.  (Mem. Supp. Mot. Dismiss 8–14, ECF No. 25 (citing *Strag v. Bd. of Trustees, Craven Comm. Coll.*, 55 F.3d 943, 950 (4th Cir. 1995) (citing *Soble v. Univ. of Md.*, 778 F.2d 164, 167 (4th Cir. 1985)); *Earl v. Norfolk State Univ.*, Civil No. 2:13cv148, 2014 WL 583972 (E.D. Va. Feb. 13, 2014); *Noel-Batiste v. Va. State Univ.*, Civil No. 3:12cv826, 2013 WL 499342 (E.D. Va. Feb. 7, 2013)).)

While it is possible that Defendants may be correct in their assertion that "courts *typically* find that professors teaching in a department different from the one by which the plaintiff was employed *do not* qualify as proper comparators," (*Id.* (first emphasis added, second in original)), neither the EPA nor the pertinent case law in the Fourth Circuit *requires* plaintiffs to plead comparators who are teaching in the same academic department as a matter of law.

Moreover, when viewing Plaintiff's F.A.C. in a light most favorable to her, the Court similarly cannot find on the limited record before it that teaching undergraduate courses with a large number of students requires different skills, efforts, and responsibilities than teaching primarily graduate and doctorate-level courses with fewer students.  Plaintiff has affirmatively pleaded that "the task of teaching students in various

14

disciplines requires equivalent skill and responsibility" (F.A.C. ¶ 32), and has provided

sufficient facts to infer that Shackleford and Dial are proper comparators under the EPA.

(*See id.* ¶¶ 21, 25–29, 31–33, 50, 64, 77; *see also* F.A.C. Ex. B, ECF No. 19-3 (expert

regression analysis of the salaries of professors at VSU during the relevant time period).)

Therefore, the Court finds that Plaintiff has adequately pleaded a case for wage

discrimination under the EPA and will deny Defendants' Motion to Dismiss as it pertains

to Count I.[11]

### ii. Retaliation under the EPA

In Count II of her F.A.C., Plaintiff alleges that Defendants unlawfully retaliated

against her in response to the Task Force presentation.

To properly state a retaliation claim under the EPA, a plaintiff is required to show:

(1) that she engaged in a protected activity; (2) that Defendants took some adverse

employment action against her; and (3) that a causal connection existed between the

protected activity and the adverse action.[12] *Holland v. Washington Homes, Inc.*, 487 F.3d

208, 218 (4th Cir. 2007); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)

(citing *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985)). "The

antiretaliation provision [of the EPA] seeks to secure [the] primary objective [of

---

[11] The Court notes Defendants' alternative argument that Plaintiff has allegedly admitted that VSU's wage differentials were "based on a[] factor other than sex." 29 U.S.C. § 206(d). Defendants contend that by incorporating the report of B. Robert Kreiser, Ph.D. (F.A.C. Ex. A), Plaintiff has affirmatively pleaded Dr. Kreiser's reference to an email between Provost Hill and Dr. Miller where they attempted to justify the high salaries awarded to Shackleford and Dial. (*Id.* at 17.) Defendants assert that this reference constitutes an admission that Defendants' justification is valid. The Court finds that this argument is devoid of merit, however, because Plaintiff has merely adopted Dr. Kreiser's allegation that Defendants made these claims, not that those claims are valid defenses on their own.

[12] The Court observes that the same standard is utilized for assessing both EPA and Title VII retaliation claims. *See Kennedy v. Va. Polytechnic Inst. & State Univ.*, 781 F. Supp. 2d 297, 303 (W.D. Va. 2011); *Harrison v. Principi*, Civil Action No. 3:03-1398, 2005 WL 4074516, at *7 (D. S.C. Aug. 31, 2005).

promoting a workplace where individuals are not discriminated against because of their sex] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

For a plaintiff to establish that she engaged in a protected activity in satisfaction of the first element, she must show that she "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the EPA. 29 U.S.C. § 215(a)(3). The Fourth Circuit has noted that protected activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

After reviewing Plaintiff's F.A.C., the Court finds that she has pleaded facts sufficient to satisfy the first element of the analysis by detailing her participation in the Task Force during the Spring 2012 semester (F.A.C. ¶ 83), by stating that she filed a formal EEOC charge of discrimination and retaliation on April 13, 2015 (*id.* ¶ 111), and by noting that she filed her initial EPA Complaint against VSU on May 22, 2015.[13] (*Id.* ¶ 112.) Any one of these actions could reasonably be construed as a protected activity under the EPA.

---

[13] The Court notes that Plaintiff also contends that her conversation with Board of Visitors member Terone Green and the fact that she restated her claims of gender inequity at the time she requested a pay raise both constitute additional protected acts under the EPA. Defendants disagree, arguing that Plaintiff "cannot turn every adverse action into retaliation simply by reasserting the same complaint whenever she requests anything from VSU." (Mem. in Support of Mot. to Dismiss 18.) While this is a point of contention between the parties, the Court finds that it can adequately address the sufficiency of Plaintiff's F.A.C. without resolving this issue at this stage of the litigation.

Turning to the second element, the Supreme Court has held that a materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (citations and internal quotation marks omitted)).

Nevertheless, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Courts must conduct a fact-specific analysis in each case to determine whether an employer's actions would have deterred a reasonable employee from seeking protection under the EPA. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."); *see also Burlington Northern*, 548 U.S. at 69 ("[A] legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an 'act that would be immaterial in some situations is material in others.'" (quoting *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005)).

So, for example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Burlington Northern*, 548 U.S. at 69 (citing *Washington*, 420 F.3d at 662 (finding that a "flex-time" schedule was critical to an employee with a disabled child)). Similarly, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a

17

weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id.*

At a minimum, the Court finds that denying Plaintiff's requested salary increase is sufficient to constitute an adverse employment action. Beyond this finding, the Court determines that, based on the detailed allegations in Plaintiff's amplified F.A.C., several of Defendants' other actions "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations and quotation marks omitted). These actions include, but are not limited to: (1) intentionally delaying in signing paperwork on two occasions, which prevented Plaintiff from being paid in a timely manner (F.A.C. ¶¶ 91–92); (2) refusing to assist Plaintiff while she faced a formal discrimination complaint that Defendants encouraged a student to file (*id.* ¶¶ 97–98); (3) making veiled threats to Plaintiff referencing an antagonistic view taken by the VSU Administration against her (*id.* ¶¶ 96, 101; F.A.C. Ex. A, at 22); (4) refusing to address Plaintiff's concerns regarding a troubled student who was stalking her (F.A.C. ¶ 116); and (5) removing Plaintiff from her role of giving the Freshman Orientation speech without explanation. (*Id.* ¶ 116.) Each of these events could rationally be seen as more than just "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern*, 548 U.S. at 68. Therefore, the Court finds that Plaintiff has adequately pleaded facts that are sufficient to satisfy the second element of an EPA retaliation claim.

In order to satisfy the third and final element on an EPA retaliation claim, a

plaintiff must plausibly allege that her employer took a materially adverse employment action "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Stated succinctly, a plaintiff must plead some rational connection between the first and second elements.

In the absence of direct evidence, temporal proximity between the protected activity and the adverse employment action can give rise to an inference of causation. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). The Fourth Circuit has suggested that a two-and-a-half month gap between the protected activity and the adverse employment action may be sufficient to weaken an inference of causation based on temporal proximity alone. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity *must be very close*." (internal quotation marks and citation omitted)); *Dowe*, 145 F.3d at 657 ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."). However, in the absence of close temporal proximity, other evidence of "retaliatory animus" from the intervening period may be used to prove causation. *Lettieri*, 478 F.3d at 650.

Though it appears to the Court that Plaintiff has pleaded multiple protected

activities and potentially materially adverse employment actions, the parties have primarily focused their briefing on whether she has adequately pleaded a causal connection between the Task Force presentation and VSU's denial of her request for a pay increase. Since there was a gap of nearly two years between these specific events, the Court finds that Plaintiff cannot rest her case on temporal proximity. *See King*, 328 F.3d at 151 n.5. Nevertheless, the Court determines that Plaintiff has sufficiently pleaded intervening events which regularly occurred between her Task Force presentation and VSU's denial of her request for a pay increase that could reasonably be viewed as exhibiting retaliatory animus on the part of Defendants. *See Lettieri*, 478 F.3d at 650–51. As described above, these detailed factual allegations are sufficient for the Court to plausibly infer a connection between the first two elements of her EPA retaliation claim.

Therefore, the Court concludes that Plaintiff has adequately pleaded all three elements for a retaliation claim under the EPA and will deny Defendants' Motion to Dismiss as it pertains to Count II.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (ECF No. 24) will be denied.

An appropriate Order will accompany this Memorandum Opinion.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

/s/

Henry E. Hudson
United States District Judge

Date: **April 4, 2017**
Richmond, Virginia